UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, the CHICAGO REGIONAL COUNCIL OF CARPENTERS APPRENTICE TRAINING FUND, | ) ) ) ) ) ) ) | Case No. 11-cv-2924 |
| Plaintiffs, | ) ) | Judge Sharon Johnson Coleman |
| v. | ) ) | |
| ESTATE INSTALLATIONS, INC., and ODC, LLC, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On June 23, 2010, a consent judgment in the amount of $328,497.63 was entered in favor of plaintiffs Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Welfare Fund, and the Chicago Regional Council of Carpenters Apprentice Training Fund (collectively "Chicago Regional") against defendant Estate Installations, Inc. ("Estate") for contributions and Employee Retirement Income Security Act ("ERISA") damages for the period of October 2002 through September 2008. On May 2, 2011, after Estate failed to pay the judgment amount, Chicago Regional initiated this instant action against Estate and ODC, LLC ("ODC") alleging that ODC should be held liable for the judgment against Estate under the theory of successor liability, the alter ego doctrine, and the single employer doctrine. On June 8, 2012 ODC moved for summary judgment pursuant to Fed. R. Civ. P. 56(b). For the foregoing reasons, ODC's motion is granted in its entirety.

**Background**

Estate, a corporation that performed window and siding construction work between 1996 and 2010, was a signatory to a collective bargaining agreement with the Carpenters Union. (Def.'s Rule 56 Stmt. at ¶3). Under the collective bargaining agreement, Estate was required to make pension and welfare contributions on behalf of unionized employees. (Def.'s Rule 56 Stmt. at ¶3). Ronald Lentine ("Lentine") is the former owner, president, and vice president of

Estate. (Lentine Dep. 8:1-13 March 21, 2012). Lentine served many roles as Estate's sole officer. (Lentine Dep. 8:1-13).[1]

Richard O'Donnell ("O'Donnell") worked as a former roofer, sider, and supervisor for Estate from 1981 to 2008.[2] (O'Donnell Dep. 7:10-15 Nov. 16, 2010; O'Donnell Dep. 12:10-24 Apr. 23, 2012). As a supervisor for Estate, part of his responsibilities included having meetings or phone conversations with employees to let them know where they would be working. (O'Donnell Dep. 14:8-15:10 Apr. 23, 2012). Additionally, O'Donnell was given the authority to enter contracts and bids on behalf of Estate. (Lentine Dep. 45:10-18). In 2008 O'Donnell resigned from Estate. (O'Donnell Dep. 25:7-9 Apr. 23, 2012). When Lentine and Estate began experiencing difficulty in 2008, O'Donnell assisted collecting time cards and supervising Estate employees at job sites despite his resignation. (Lentine Dep. 37:7-20; 38:15-16; 40:9-24 March 21, 2012).

In March 2009 O'Donnell formed ODC. (O'Donnell Dep. 38:13-15 Nov. 16, 2010). ODC performs primarily window installation work like Estate, but also engages in occasional drywall work, plumbing, electrical work, painting, asphalt repair, and various other construction jobs. (O'Donnell Dep. 19:14-17; 20:6-21:11 Apr. 23, 2012; O'Donnell Dep. 38:19-39:10). ODC is a limited liability corporation and is not a signatory with any labor union. (O'Donnell Dep. 19:18-20:5; 22:23-23:3 Apr. 23, 2012). O'Donnell funded ODC with his own personal savings and received no financial assistance from Lentine or Estate. (O'Donnell Dep. 61:21-62:7 Nov. 16, 2010). In 2012 O'Donnell hired some former Estate employees to work at ODC. (O'Donnell Dep. 62: 8-10; Pl.'s Resp. to Def.'s Rule 56 Stmt.). ODC also took over some projects formerly belonging to Estate and gained new business with former Estate clients. (O'Donnell Dep. 124:18-125:8 Apr. 23, 2012). O'Donnell estimates that about thirty-five percent of ODC's present contracts are former Estate clients. (O'Donnell Dep. 124:18-21 Apr. 23, 2012).

---

[1] Chicago Regional argues that O'Donnell was in fact the vice president, owner, and principal of Estate until all operations were allegedly transferred to ODC. Chicago Regional argues further that O'Donnell continued to manage the day to day operations of Estate until he started to perform work exclusively for ODC. Chicago Regional's arguments are unsupported by the record.

[2] About 12 to 15 years ago, Estate was formerly known as "Estate Siding" before Lentine changed the company's name to "Estate Installations" when he expanded the services provided beyond siding work to include window installations. (Lentine Dep. 8:20-9:11 March 21, 2012; O'Donnell Dep. 6:12-23 Nov. 16, 2010).

On June 23, 2010, a judgment was entered against Estate in the amount of $328,497.63 for failure to make pension and welfare contributions between October 2002 and September 2008. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶3). Estate subsequently went out of business and never paid the judgment due. Chicago Regional bought this instant action to collect from ODC arguing that ODC should be held liable pursuant to the successor liability theory, the alter ego doctrine, and the single employer doctrine. ODC now moves for summary judgment pursuant to Fed. R. Civ. P. 56(b).

**Legal Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A "genuine" issue exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, all ambiguities must be resolved and all inferences drawn in favor of the nonmoving party. *Abdullahi v. City of Madison*, 423, F.3d 763, 773 (7th Cir. 2005).

**Discussion**

ODC contends that summary judgment should be granted in its favor because there is no legal relationship between ODC and Chicago Regional. Chicago Regional argues that there is successor liability.

1. *Successor Liability*

Successor liability is an equitable doctrine that provides an exception to the general rule that a purchaser of assets does not acquire a seller's liabilities. *Cent. States, Southeast & Southwest Areas Pension Fund v. Ehlers Dist., Inc*., No. 11 C 2691, 2012 U.S. Dist. LEXIS 94091, 4-5 (N.D. Ill. July 9, 2012). Successor liability applies when "(1) the successor had notice of the claim [against the predecessor] before the acquisition; and (2) there was substantial continuity in the operation of the business before and after the sale." *Cent. States, Southeast & Southwest Areas Pension Fund v. Ehlers Dist., Inc*., No. 11 C 2691, 2012 U.S. Dist. LEXIS 94091, 4-5 (N.D. Ill. July 9, 2012); *see also Chicago Truck Drivers, Helpers & Warehouse*

*Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995). The parties here dispute the continuity element.

The continuity element is factual in nature and based on the totality of the circumstances. Continuity requires that "the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." *Sullivan v. Alpine Irrigation Co.*, No. 09 C 2329, 2011 U.S. Dist. LEXIS 44571 at *16 (N.D. Ill. Apr. 25, 2011) (internal quotations omitted). In making this determination, the court considers "whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers." *Id.* at *16-17.

The requisite continuity in operations is absent here. First, ODC acquired no assets from Estate. (O'Donnell Dep. 124:7-9 Apr. 23, 2012). Indeed, Chicago Regional argues itself that "Estate never owned any real property, equipment, machinery or had any assets" to be acquired in the first place. (Pl.'s Mem. in Opp. 10; Pl.'s Stmt of Add'l Facts ¶17). Thus, the parties agree that no assets existed at the time Estate went out of business. (Def.'s Reply to Pl.'s Stmt. of Add'l Facts ¶17). Therefore, Chicago Regional cannot demonstrate any acquisition of substantial assets.

Next, Chicago Regional argues that because ODC and Estate are both engaged in window installation, the companies are essentially the same. ODC maintains that although it initially performed similar window installation work as Estate, it never performed window siding work like Estate, and has since begun other construction work that Estate never performed. To argue that two companies performing similar work are necessarily the same is unreasonable. For example, two fast food restaurants serving the same type of food to the same customers may be engaged in similar work; however, the businesses of both companies are not necessarily the same for purposes of successor liability. Clearly, two companies engaged in the same kind of work is insufficient by itself to establish that the businesses of both employers are essentially the same. Furthermore, Lentine has no ownership interest or involvement with ODC nor is there any evidence that Estate had any common business with ODC outside of the fact that they both independently engaged in similar window installation work. (Lentine Dep. 18:12-17 March 21, 2012; O'Donnell Dep. 8:6-10 Apr. 23, 2012).

Regarding the second factor, whether employees of the new company are doing the same jobs in the same working conditions under the same supervisors, the parties dispute the exact role of O'Donnell at Estate. Chicago Regional argues that O'Donnell was a "principal" and owner of Estate, while ODC argues that O'Donnell was merely a supervisor. Despite O'Donnell's arguably expansive role as a supervisor and ability to enter into contracts and bids on behalf of Estate during his employment, the documents and evidence referred to by Chicago Regional are insufficient to establish that O'Donnell was an owner of Estate. Even if this Court were to assume that O'Donnell was a former owner of Estate, this alone is insufficient to establish continuity. The question of successor liability "is primarily factual in nature and is based upon the totality of the circumstances of a given situation." *Brend v. Sames Corp.*, No. 00 C 4677, 2002 U.S. Dist. LEXIS 12648, at *14 (N.D. Ill. July 9, 2002) (internal quotations omitted). In light of deposition testimony by both O'Donnell and Lentine, the lack of any assets acquired, and the lack of ODC and Estate engaging in essentially the same business, the totality of the circumstances despite a reference to O'Donnell as a "principal" of Estate in a single correspondence letter and O'Donnell's signature on contracts as the "vice-president," is insufficient to establish the requisite continuity between Estate and ODC.

Furthermore, the parties do not dispute that ODC hired former Estate employees beginning in April of 2010. (Pl.'s Resp. to Def.'s Rule 56 Stmt.). However, the record is devoid of facts demonstrating that these workers completed their jobs in the same working conditions or that these employees reported to O'Donnell as their supervisor in the same manner as they had done at Estate. In April 2010, ODC met with Lakeland, a former customer of Estate, to discuss ODC taking over work that Estate was no longer able to complete. (O'Donnell Dep. 63:15-19 Apr. 23, 2012). Additionally, some of the new projects that ODC gained in 2010 were from former clients of Estate after Estate went out of business. (O'Donnell Dep. 124:22-125:1 Apr. 23, 2012). However, the majority of ODC's new contracts were from companies that had never worked with Estate. (O'Donnell Dep. 124:18-21 Apr. 23 2012). These facts and the totality of the circumstances support ODC's contention that there was no continuity between Estate and ODC. The record does not demonstrate that ODC is in effect the same business enterprise as Estate. Accordingly ODC's motion for summary judgment concerning Estate's successor liability claim is granted.

  2. *Single Employer Doctrine*

  Chicago Regional argues that Estate and ODC should be treated as one under the single employer theory.[3] Under the single employer doctrine, a court examines four factors to determine whether two separate entities operating side-by-side may be treated as one: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Anderson v. Liles*, 774 F. Supp. 2d 902, 909 (N.D. Ill. 2011) (internal citations omitted); *see also Favia,* 995 F.2d at 788.

  ODC has sufficiently shown that there are no genuine issues of material fact concerning Chicago Regional's argument for the applicability of the single employer doctrine. The record is bereft of evidence demonstrating that Estate and ODC are interrelated financially or organizationally. While a former Estate employee created and now runs ODC, this by itself is of nominal significance in demonstrating an interrelation of operations. *See Burnett v. Intercon Sec.*, No. 97 C 3385, 1998 U.S. Dist. LEXIS 3648, at *20-21 (N.D. Ill. Mar. 20, 1998) (holding that although there was some degree of interrelation of operations among the entities at issue, evidence of (1) using the same bank without a demonstration that bills were paid out of a single account or that banking practices ignored the distinctiveness of each entity's accounts; (2) sharing the same commercial payroll service without demonstrating that accounting or bookkeeping was singular or that the hundreds of employees employed by the entities were lumped into one; and (3) the mere storage of records at the same address were of nominal significance).

  In this case, there was no common management between the two parties. While O'Donnell supervised employees at both Estate and ODC for a limited period of time, supervision at both companies is insufficient to destroy the separateness of management. *See Favia,* 995 F.2d at 788 (noting that "the fact that [the same individual in the preceding and successor companies] managed the work sites for both businesses was not sufficient to destroy the separateness of management"). As to evidence of centralized control of labor relations between Estate and ODC, there is none. Although ODC hired former employees of Estate, this factor alone, considering the propensity for construction workers to move from company to company and job site to job site does not demonstrate that the labor relations of Estate and ODC

---

[3] Chicago Regional initially alleged in its complaint that ODC is the alter ego of Estate. The Court need not address this argument as Chicago Regional does not dispute that there is no evidence demonstrating a transfer of assets motivated by unlawful intent as required for an alter ego claim.

were centralized. Accordingly, Chicago Regional fails to demonstrate any issue of material fact in support of its claim that ODC should be held liable under a single employer theory. ODC's motion for summary judgment regarding this claim is granted.

**Conclusion**

For the reasons stated above, ODC's motion for summary judgment is granted in its entirety.

IT IS SO ORDERED.

Date: February 8, 2013

Sharon Johnson Coleman
United States District Judge